1 | Todd Espinosa (SBN 209591)
  | Law Office of Todd Espinosa
2 | 2000 Broadway Street, Suite 333
  | Redwood City, California 94063
3 | 650-241-3873 telephone
  | 650-409-2550 facsimile
4 | tie@toddespinosalaw.com
  | *Attorney for Plaintiffs Erin Russell,*
5 | *Jason Russell and Project Sentinel, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIN RUSSELL; JASON RUSSELL; and PROJECT SENTINEL, INC. | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| RUTH MARGARET "Peggy" KRAMER, both individually and as trustee of the Ruth M. Kramer Living Trust. | |
| Defendant. | |

RUSSELL, et al. v. KRAMER
COMPLAINT

Plaintiffs Erin Russell, Jason Russell and Project Sentinel, Inc. (referred to collectively herein as "Plaintiffs") allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, namely 42 U.S.C. §§ 3604 and 3613.

2. This Court further has supplemental jurisdiction over Tenant Plaintiffs' claim under California state law pursuant to 28 U.S.C. § 1367(a) because that California state law claim is related to Plaintiffs' claim under 42 U.S.C. §§ 3604 and 3613 and forms part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District.

4. Based on the allegations set forth herein, the Court has personal jurisdiction over all parties named in this action.

## II. PARTIES

**A.  Plaintiffs Erin Russell, Jason Russell and Project Sentinel, Inc.**

5. Plaintiffs Erin Russell and Jason Russell (referred to collectively herein as "Tenant Plaintiffs") are a married couple. Tenant Plaintiffs rent a single-family house located at 950 Boyce Avenue, Palo Alto, California 94301 (referred to herein as the "Boyce Avenue house"). Tenant Plaintiffs reside in the Boyce Avenue house with their very young, minor children.

6. Plaintiff Project Sentinel, Inc. (referred to herein as "Plaintiff Project Sentinel") is a California non-profit corporation. Plaintiff Project Sentinel was founded in 1971. Plaintiff Project Sentinel's organizational mission includes the promotion of equal opportunity in rental housing and the elimination of all forms of unlawful housing discrimination. In 1998, Plaintiff Project Sentinel was approved by the U.S. Department of Housing and Urban Development (commonly known as "HUD") as a Housing Counseling Agency. Plaintiff Project Sentinel is the largest such organization in Northern California and has offices in Fremont, Redwood City, Santa Clara, Gilroy and Modesto.

**B.     Defendant Ruth Margaret "Peggy" Kramer**

7. Defendant Ruth Margaret Kramer (referred to herein as "Defendant") is an individual. Defendant is also known as and calls herself "Peggy Kramer." On information and belief and based on a review of property and assessor information, Defendant owns the Boyce Avenue house as trustee of the Ruth M. Kramer Living Trust.

8. Defendant is Tenant Plaintiffs' landlord and operates and manages the Boyce Avenue house as a rental property. On information and belief and based on Defendant's statements, Defendant also owns and manages other rental properties in addition to the Boyce Avenue house.

9. Defendant resides in a high-rise condominium in Palo Alto, California. Defendant does not reside in the Boyce Avenue house.

10. On information and belief and based on a review of on-line records maintained by the California Bureau of Real Estate, Defendant is or was a real estate salesperson.

RUSSELL, et al. v. KRAMER
COMPLAINT                                                                                           Page 2

11. On information and belief and based on a review of property and assessor information, Defendant owns more than three single-family houses and has owned more than three single-family houses at all times relevant herein.

### III.  FACTUAL ALLEGATIONS

**A.  The Boyce Avenue House and the Facially Discriminatory "Pregnancy Clause" in Defendant's Rental Agreement**

12. The Boyce Avenue house is a two-bedroom single-family house.

13. Tenant Plaintiffs first learned of the Boyce Avenue house through an advertisement posted on the craigslist.org website.

14. On May 15, 2013, Tenant Plaintiffs and Defendant signed a written rental agreement for the Boyce Avenue house that was prepared by Defendant.

15. In July 2013, Tenant Plaintiffs moved into the Boyce Avenue house and began to reside in the Boyce Avenue house with their then approximately one year-old son and three year-old daughter.

16. **Exhibit A** to this complaint, which is incorporated into and made a part of this complaint, is a true and correct copy of the Boyce Avenue house rental agreement that was signed by Tenant Plaintiffs and Defendant.  **Exhibit A** has been redacted to exclude the names of Tenant Plaintiffs' minor children.

17. Paragraph 27 of the Boyce Avenue house rental agreement is an additional provision that was personally handwritten by Defendant.

18. Paragraph 27 of the Boyce Avenue house rental agreement states in relevant part: "Should Mrs. Russell become pregnant[,] Landlord is to be notified.  Tenants would be required to move within 4 months after child is born.  (Premises too small for 3 children)"

19. Paragraph 27 of the Boyce Avenue house rental agreement is referred to herein as the "pregnancy clause."

**B.     Defendant's Further Discriminatory Conduct**

20. On or about June 8, 2014, Tenant Plaintiffs sent Defendant e-mail informing Defendant that Tenant Plaintiffs were expecting the birth of a third child, a daughter, in July 2014.

21. While Tenant Plaintiffs were excited and very happy to be expecting a new child, Tenant Plaintiffs' most recent pregnancy was unplanned. At the time that they began to rent the Boyce Avenue house, Tenant Plaintiffs did not intend to have more children.

22. On June 8, 2014, Defendant sent Tenant Plaintiffs an e-mail message invoking the pregnancy clause in the Boyce Avenue house rental agreement and informing Tenant Plaintiffs that they and their children will be required to leave their home. Defendant stated in that June 8, 2014 e-mail message: "As you know there is a clause in our rental agreement which gives you 4 months after the birth to find another rental since the house is too small and too old to accommodate 3 children."

23. On June 23, 2014, approximately one month before the birth of Tenant Plaintiffs' daughter, Defendant sent Tenant Plaintiffs an e-mail message asking whether Tenant Plaintiffs has made any plans regarding future housing.

24. On June 23, 2014, Tenant Plaintiffs sent an e-mail message to Defendant stating that they had not made any future housing plans. In that June 23, 2014 e-mail message Tenant Plaintiffs asked Defendant to allow them to remain in their home with their children. Tenant Plaintiffs pointed out that their newborn daughter would require very little additional space and also reminded Defendant of the physical improvements made to the Boyce Avenue house, for which Tenant Plaintiffs had paid in whole or in part.

25. The Boyce Avenue house is of sufficient size to accommodate Tenant Plaintiffs and their children.

26. On June 24, 2014, Defendant sent Tenant Plaintiffs an e-mail message in which she refused to allow Tenant Plaintiffs to remain in their home because of Plaintiff Erin Russell's pregnancy and the upcoming birth of Tenant Plaintiffs' daughter: "I am sorry to disappoint you but am [sic] firm about the terms of our original agreement and will not extend your rental agreement beyond Nov.30th. [sic]"

27. Tenant Plaintiffs' daughter was born in 2014. Tenant Plaintiffs currently reside in the Boyce Avenue house with their newborn infant daughter, son (now two-years-old) and eldest daughter (now four years-old).

**C.  Tenant Plaintiffs Received Assistance from Plaintiff Project Sentinel and Unsuccessfully Attempted to Resolve Their Dispute with Defendant**

28. In August 2014, Tenant Plaintiffs contacted Plaintiff Project Sentinel regarding Tenant Plaintiffs' dispute with Defendant and Defendant's discriminatory conduct and requested Plaintiff Project Sentinel's assistance. Plaintiff Project Sentinel consulted with Tenant Plaintiffs regarding their fair housing rights and assisted Tenant Plaintiffs' in attempting to resolve their dispute with Defendant.

29. On September 29, 2014, Defendant sent another e-mail to Tenant Plaintiffs reminding them that they would have to move and informing Tenant Plaintiffs that Defendant intended to show the Boyce Avenue house to prospective new tenants for the Boyce Avenue house whom Defendant described as "a couple."

30. On September 29, 2014, Tenant Plaintiffs sent an e-mail message to Defendant informing Defendant that termination of Tenant Plaintiffs' rental agreement because of the birth of their daughter is unlawful discrimination based on familial status. Tenant Plaintiffs further

informed Defendant that the pregnancy clause of the Boyce Avenue house rental agreement is also contrary to law and therefore unenforceable.

31. In a further e-mail message that Defendant sent to Tenant Plaintiffs on September 29, 2014, Defendant indicated that if she had known that the pregnancy clause that Defendant drafted was unlawful, she "probably would have rented to a couple" without children.

32. On October 2, 2014, Defendant sent an e-mail message to Tenant Plaintiffs in which she indicated that Tenant Plaintiffs and their children would have to leave their home before December 1, 2014 and made veiled threats regarding the immediate termination of Tenant Plaintiffs' tenancy and future rent increases:

> Jason, I don't agree that we see eye to eye on the subject of what happens December 1, 2014. . . . You recognize, of course, that your lease expired June 30, 2014 and you are currently on month to month basis. I have given you July, Aug, Sept, Oct and November to look for another rental — which was far more than I was legally bound to do. In fact since you tell me the pregnancy clause was illegal; then the extra months I gave you to look for a rental were also not necessary. And I have not as yet raised your rent which I have every right to do with notice since I am under current market value and your lease has expired.

33. Tenant Plaintiffs continued to consult with Plaintiff Project Sentinel.

34. On October 16, 2014, at Tenant Plaintiffs' request, Plaintiff Project Sentinel posted a letter to Defendant via certified mail describing Defendant's obligations under state and federal fair housing law and proposing a resolution to the dispute between Tenant Plaintiffs' and Defendant. In that letter, Plaintiff Project Sentinel requested that Defendant respond by October 27, 2014. The letter further informed Defendant that if Defendant failed to respond, Tenant Plaintiffs would be forced to pursue legal action.

35. According to delivery confirmation information provided by the U.S. Postal Service, Plaintiff Project Sentinel's October 2014 letter was delivered to Defendant's condominium residence in Palo Alto, California on October 18, 2014.

36. Defendant has not responded to Plaintiff Project Sentinel's October 2014 letter.

37. Because Defendant has not responded to Plaintiff Project Sentinel's letter and based on Defendant's repeated statements regarding her intention to enforce the pregnancy clause in the Boyce Avenue house lease agreement, Tenant Plaintiffs fear that Defendant will take steps to force Tenant Plaintiffs and their children from their home after November 30, 2014.

38. The conduct by Defendant that is the basis for Plaintiffs' claims asserted herein is intentional.

**D. Plaintiffs Have Been Harmed and Are Threatened with Further Harm as a Result of Defendant's Conduct**

39. Defendant's conduct alleged herein has harmed Plaintiffs and threatens Plaintiffs with further harm.

40. Tenant Plaintiffs have suffered and will continue to suffer mental and emotional distress due to Defendant's conduct. Tenant Plaintiffs fear that they and their children will lose their home.

41. Defendant's conduct alleged herein has impaired and frustrated Project Sentinel's mission to promote equal housing opportunity and to eliminate unlawful housing discrimination and has required Project Sentinel to divert resources to identify and counteract Defendant's discrimination against Tenant Plaintiffs and their children based on familial status.

42. Among other activities, Plaintiff Project Sentinel expended staff time and tangible and financial resources to investigate Defendant's discriminatory housing practices and to counteract Defendant's discriminatory conduct by consulting with Tenant Plaintiffs regarding

1   their fair housing rights and attempting to assist Tenant Plaintiffs in resolving their fair housing
2   dispute with Defendant.

3   43.   In addition, as part of a further effort to counteract Defendant's discriminatory
4   housing practices, Plaintiff Project Sentinel engaged in various education and outreach efforts in
5   and around Palo Alto, California. Those education and outreach efforts included mailing printed
6   educational materials regarding fair housing and legal prohibitions against familial status
7   discrimination to organizations that provide services to families with children in the Palo Alto,
8   California and to other families that Plaintiff Project Sentinel believed to be renting homes in the
9   area around the Boyce Avenue house. Plaintiff Project Sentinel's education and outreach efforts
10  also included a fair housing training given by Plaintiff Project Sentinel on November 13, 2014 to
11  rental property management professionals in the Palo Alto, California area that specifically
12  addressed familial status discrimination.

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

For Violation of the Fair Housing Act, 42 U.S.C. § 3604(b)

By All Plaintiffs Against Defendant

17  44.   As alleged herein, Defendant has engaged in discriminatory housing practices
18  based on familial status in the rental of the Boyce Avenue house to Tenant Plaintiffs.

19  45.   Defendant's discriminatory housing practices include repeated discrimination
20  against Tenant Plaintiffs based on familial status in the terms, conditions and/or privileges of the
21  rental of the Boyce Avenue house in violation of 42 U.S.C. § 3604(b).

46. Under 42 U.S.C. § 3602(k), the prohibitions against discriminatory housing practices based on "familial status" apply to a person who is pregnant and to a child residing with a parent.

47. Because Plaintiffs have been and will be injured by Defendant's discriminatory housing practices, Plaintiffs are aggrieved persons.

## SECOND CAUSE OF ACTION

For Violation of the Fair Housing Act, 42 U.S.C. § 3604(c)

By All Plaintiffs Against Defendant

48. As alleged herein, Defendant has engaged in discriminatory housing practices based on familial status in the rental of the Boyce Avenue house to Tenant Plaintiffs.

49. Defendant's discriminatory housing practices include repeatedly making statements with respect to the rental of the Boyce Avenue house that indicate a preference, limitation and/or discrimination based on familial status or an intention to make such a preference, limitation and/or discrimination in violation of 42 U.S.C. § 3604(c).

50. Under 42 U.S.C. § 3602(k), the prohibitions against discriminatory housing practices based on "familial status" apply to a person who is pregnant and to a child residing with a parent.

51. Because Plaintiffs have been and will be injured by Defendant's discriminatory housing practices, Plaintiffs are aggrieved persons.

**THIRD CAUSE OF ACTION**

For Violation of the California Unruh Civil Rights Act, California Civil Code § 51

By Tenant Plaintiffs Against Defendant

52. As alleged herein, Defendant has discriminated in the rental of the Boyce Avenue house based upon age and/or sex in violation of California Civil Code § 51.

53. For the purposes of California Civil Code § 51, "sex" includes pregnancy and childbirth.

54. Defendant is or operates as a business establishment. The Boyce Avenue house is a business establishment.

55. Tenant Plaintiffs have suffered and will suffer injury and damages because of Defendant's denial of rights provided in California Civil Code § 51.

**V. PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

a. For a temporary restraining order and/or preliminary order enjoining Defendant from taking any steps to evict, remove or displace Tenant Plaintiffs and their children from the Boyce Avenue house during the pendency of this action;

b. For an order permanently enjoining Defendant from engaging in discriminatory housing practices and discrimination in rental housing;

c. For an order directing Defendant to arrange for and attend, at Defendant's expense, training regarding the fair housing obligations of housing providers under applicable law;

d. For a judicial declaration that Defendant has violated 42 U.S.C. § 3604(b) and (c) and California Civil Code § 51;

1     e.    For a judicial declaration that the pregnancy clause of the Boyce Avenue house rental agreement is contrary to law, void and unenforceable;

    f.    For actual, treble and statutory damages, including minimum statutory damages pursuant to California Civil Code § 52(a) for each Tenant Plaintiff for each violation of California Civil Code § 51 by Defendant;

    g.    For punitive damages;

    h.    For attorney fees and costs;

    i.    For pre-judgment and post-judgment interest as prescribed law; and

    j.    For any other relief necessary to remedy the violations of law alleged herein and to prevent such violations from recurring; and

    k.    For all such other and further relief as this Court deems just and proper.

## VI. DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all claims so triable.

Respectfully submitted,

Date: November 14, 2014     */s/ Todd Espinosa*
Todd Espinosa
Law Office of Todd Espinosa
2000 Broadway Street, Suite 333
Redwood City, California 94063
tie@toddespinosalaw.com
650-241-3873 telephone
650-409-2550 facsimile
*Attorney for Plaintiffs Jason Russell,
Erin Russell and Project Sentinel, Inc.*

# EXHIBIT A

RENTAL AGREEMENT

_Peggy Kramer_ ("Landlord") and
JASON & ERIN RUSSELL , ("Tenant") agree as follows:

1. **PROPERTY:**
   A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: 950 BOYCE, PALO ALTO, CA 94301 ("Premises").
   B. The following personal property is included: STOVE, REF, D/W, WASHER/DRYER

2. **TERM:** The term begins on (date) JULY 1, 2013 ("Commencement Date"), (Check A or B):
   ☐ A. Month-to-month: and continues as a month-to-month tenancy. Either party may terminate the tenancy by giving written notice to the other at least 30 days prior to the intended termination date, subject to any applicable local laws. Such notice may be given on any date.
   ☒ B. Lease: and shall terminate on (date) JUNE 30, 2014 at 12:01 AM/~~PM~~.
   Any holding over after the term of this Agreement expires, with Landlord's consent, shall create a month-to-month tenancy which either party may terminate as specified in paragraph 2A. Rent shall be at a rate equal to the rent for the immediately preceding month, unless otherwise notified by Landlord, payable in advance. All other terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:**
   A. Tenant agrees to pay rent at the rate of $ 2,500.00 per month for the term of the Agreement.
   B. Rent is payable in advance on the 1st ( or ☐ ____ ) day of each calendar month, and is delinquent on the next day.
   C. If Commencement Date falls on any day other than the first day of the month, rent shall be prorated based on a 30-day period. If Tenant has paid one full month's rent in advance of Commencement Date, rent for the second calendar month shall be prorated based on a 30-day period.
   D. PAYMENT: The rent shall be paid to (name) Peggy Kramer , at (address) 101 ALMA ST. #1205, PALO ALTO, CA 94301 , or at any other location specified by Landlord in writing to Tenant.

4. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay $ 2,600.00 as a security deposit. Security deposit will be ☒ given to the Owner of the Premises; or ☐ ~~held in Owner's Broker's trust account.~~
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (1) cure Tenant's default in payment of rent, Late Charges, NSF fees, or other sums due; (2) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of Tenant; (3) clean Premises, if necessary, upon termination of tenancy; and (4) replace or return personal property or appurtenances. SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is used during tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to Tenant. Within three weeks after Tenant vacates the Premises, Landlord shall (1) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition, and (2) return any remaining portion of security deposit to Tenant.
   C. No interest will be paid on security deposit, unless required by local ordinance.

5. **MOVE-IN COSTS RECEIVED/DUE:**

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from JULY 1 to AUG 1, 2014 (date) | 2,500 | | 2,500 | 7/1/13 |
| *Security Deposit | 2,600 | Rec 5-19-2013 | ~~2,600~~ | 5/17/13 |
| Other | | ✓ (CHECK DATED 5/17/2013) | | |
| Other | | | | |
| Total | 5,100 | | | |

*The maximum amount that Landlord may receive as security deposit, however designated, cannot exceed two month's rent for an unfurnished premises, and three month's rent for a furnished premises.

6. **LATE CHARGE/NSF CHECKS:** Tenant acknowledges that either late payment of rent or issuance of a non-sufficient funds ("NSF") check may cause Landlord to incur costs and expenses, the exact amount of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of rent due from Tenant is not received by Landlord within 5 (____) calendar days after date due, or if a check is returned NSF, Tenant shall pay to Landlord, respectively, an additional sum of $ 25.00 as Late Charge and $25.00 as a NSF fee, either or both of which shall be deemed additional rent. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date rent is due under paragraph 3, or prevent Landlord from exercising any other rights and remedies under this Agreement, and as provided by law.

7. **UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: ____ except NO EXCEPTIONS , which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined by Landlord.

8. **OCCUPANTS:** The Premises are for the sole use as a personal residence by the following named persons only: JASON & ERIN RUSSELL AND THEIR 2 CHILDREN   [REDACTED]

9. **PETS:** No animal or pet shall be kept on or about the Premises without Landlord's prior written consent, except NO EXCEPTIONS

10. **RULES/REGULATIONS:** Tenant agrees to comply with all rules and regulations of Landlord which are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger, or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing, or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

11. **INSURANCE:** Tenant's personal property and vehicles are not insured by Landlord or, if applicable, owner's association, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is to carry Tenant's own insurance (Renter's insurance) to protect Tenant from any such loss.

Tenant and Landlord acknowledge receipt of copy of this page, which constitutes Page 1 of 3 Pages.
Tenant's Initials ( JR ) ( ER )   Landlord's Initials ( PK ) ( )

Premises: __950 BOYCE, PA, CA 94301__    Date __5/14/13__

12. **WATERBEDS:** Tenant shall not use or have waterbeds on the Premises unless: (a) Tenant obtains a valid waterbed insurance policy; (b) Tenant increases the security deposit in an amount equal to one-half of one month's rent; and (c) the bed conforms to the floor load capacity of Premises.

13. **MAINTENANCE:**
    A. Tenant shall properly use, operate, and safeguard Premises, including if applicable, any landscaping, furniture, furnishings, and appliances, and all mechanical, electrical, gas and plumbing fixtures, and keep them clean and sanitary. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage. Tenant shall pay for all repairs or replacements caused by Tenant, or guests or invitees of Tenant, excluding ordinary wear and tear. Tenant shall pay for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall pay for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.
    B. ☐ Landlord, ☒ Tenant, shall water the garden, landscaping, trees and shrubs, except _____
    C. ☐ Landlord, ☒ Tenant shall maintain the garden, landscaping, trees, and shrubs, except __FOR MAJOR TREE SERVICE__

14. **ALTERATIONS:** Tenant shall not make any alterations in or about the Premises, without Landlord's prior written consent, including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish, placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials.

15. **KEYS/LOCKS:**
    A. Tenant acknowledges receipt of or Tenant will receive ☒ prior to the Commencement Date, ~~and~~ __from Michael Closson__
       ☒ __2__ key(s) to Premises, __2 TO BACK DOOR__    ☒ _____ remote control device(s) for garage door/gate opener(s).
       ☒ _____ key(s) to mailbox, _____    ☐ _____
       ☒ _____ key(s) to common area(s),    ☐ _____
    B. Tenant acknowledges that locks to the Premises ☐ have, ☐ have not, been re-keyed.
    C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

16. **ENTRY:** Tenant shall make Premises available to Landlord or representative for the purpose of entering to make necessary or agreed repairs, decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors. Landlord and Tenant agree that twenty-four hours notice (oral or written) shall be reasonable and sufficient notice. In an emergency, Landlord or representative may enter Premises at any time without prior notice.

17. **ASSIGNMENT/SUBLETTING:** Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without prior written consent of Landlord. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law, or otherwise, shall be null and void, and, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval, and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer, or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease, and does not release Tenant of Tenant's obligation under this Agreement.

18. ☒ **LEAD PAINT (CHECK IF APPLICABLE):** Premises was constructed prior to 1978. In accordance with federal law, Landlord gives, and Tenant acknowledges receipt of, the disclosures on the attached form (such as C.A.R. Form FLD-11) and a federally approved lead pamphlet. ✱

19. **POSSESSION:** If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 ~~(or_____)~~ calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all rent and security deposit paid.

20. **TENANT'S OBLIGATIONS UPON VACATING PREMISES:** Upon termination of Agreement, Tenant shall: (a) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (b) vacate Premises and surrender it to Landlord empty of all persons; (c) vacate any/all parking and/or storage space; (d) deliver Premises to Landlord in the same condition as referenced in paragraph 9; (e) clean Premises, including professional cleaning of carpet ~~and drapes~~; (f) give written notice to Landlord of Tenant's forwarding address, ~~and (g)~~ _____

All improvements installed by Tenant, with or without Landlord's consent, become the property of Landlord upon termination.

21. **BREACH OF CONTRACT/EARLY TERMINATION:** In addition to any obligations established by paragraph 24, in event of termination by Tenant prior to completion of the original term of Agreement, Tenant shall also be responsible for lost rent, rental commissions, advertising expenses, and painting costs necessary to ready Premises for re-rental.

22. **CONDITION OF PREMISES:** Tenant has examined Premises, all furniture, furnishings, appliances and landscaping, if any, and fixtures, including smoke detector(s).
    (Check one:)
    ☐ Tenant acknowledges that these items are clean and in operative condition, with the following exceptions _____
    ☒ Tenant will provide Landlord a list of items which are damaged or not in operable condition within 3 ~~(or_____)~~ days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgment of the condition of the Premises.
    Other: _____

23. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, which render Premises uninhabitable, either Landlord or Tenant may terminate Agreement by giving the other written notice. Rent shall be abated as of date of damage. The abated amount shall be the current monthly rent prorated on a 30-day basis. If Agreement is not terminated, Landlord shall promptly repair the damage, and rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in rent shall be made.

24. **TENANT REPRESENTATIONS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report at time of application and periodically during tenancy in connection with approval, modification, or enforcement of this Agreement. Landlord may cancel this Agreement, (a) before occupancy begins, upon disapproval of the credit report(s), or (b) at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.

✱ __Since landlord has owned property no lead paint used__

Tenant and Landlord acknowledge receipt of copy of this page, which constitutes Page 2 of __3__ Pages.
Tenant's Initials (__AB__) (__LN__)    Landlord's Initials (__PK__) (_____)

Premises: 950 BOYCE, PALO ALTO, CA 94301    Date 5/14/13

**25. JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

**26. NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:
Landlord: PEGGY KRAMER    Tenant: 
101 ALMA ST, #1205, PALO ALTO, CA 94301

**27. OTHER TERMS AND CONDITIONS/SUPPLEMENTS:** SHOULD MRS. RUSSELL BECOME PREGNANT LANDLORD IS TO BE NOTIFIED. TENANTS WOULD BE REQUIRED TO MOVE WITHIN 4 MONTHS AFTER CHILD IS BORN (PREMISES TOO SMALL FOR 3 CHILDREN)

**28. The following ATTACHED supplements are incorporated in this Agreement:**

**29. ATTORNEY'S FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney's fees and costs.

BE SURE TO ARRANGE FOR YOUR UTILITIES AND TELEPHONE, ETC AHEAD!

IN FRONT OF HOUSE - 2 OLEANDERS - ONE ON EACH SIDE OF ENTRANCE WHICH IS POISONOUS IF EATEN.

Tenant _[signature]_    
Tenant _[signature]_    Date 5/15/13
Landlord _Peggy Kramer_    Date 5/15/13
owner or agent with authority to enter into this lease
Landlord 650-326-7637  vp-kramer@yahoo.com    Date 5/15/13
owner or agent with authority to enter into this lease    Date Page 3 of 3 pages